UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILLIP EARL JANUARY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 22-CV-0165-CVE-JFJ |
| | ) |
| WILLIAM RANKINS, Warden, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner Phillip Earl January, a self-represented Oklahoma prisoner,[1] seeks federal habeas relief, under 28 U.S.C. § 2254, asserting that he is in custody in violation of federal law under the judgment entered against him in Mayes County District Court Case No. CF-2018-387. Having considered the petition (Dkt. # 1), the response (Dkt. # 8), the reply (Dkt. # 12), the record of state court proceedings (Dkt. ## 8, 9, 10), and applicable law, the Court finds that January has not shown that he is in custody in violation of federal law and concludes that the petition shall be denied.

**I.   Background**

In 2018, M.B.'s nine-year-old daughter, Z.H., told M.B. that M.B.'s live-in boyfriend, January, used his fingers to touch Z.H.'s genital area, under her clothing and without penetrating her vagina, more than one time. Dkt. # 9-9, Tr. Trial vol. 1, at 233-48, 250-61; Dkt. # 9-10, Tr. Trial vol. 2, at 52-53, 55, 59-60.[2] Following an investigation, the State of Oklahoma ("the state") charged January with committing lewd or indecent acts to a child under sixteen, in violation of

---

[1] Because January appears without counsel, the Court liberally construes his petition and reply. *Childers v. Crow*, 1 F.4th 792, 798 n.3 (10th Cir. 2021). But the rule of liberal construction neither requires nor permits this Court to create arguments on behalf of a pro se litigant. *Id.*

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.

OKLA. STAT. tit. 21, § 1123(A)(2).³  Dkt. # 9-13, Original Record ("O.R."), at 5.  A jury found January guilty as charged and recommended a life sentence.  Id. at 149.  The trial court sentenced him accordingly, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his conviction and sentence on direct appeal.  Dkt. # 9-12, Tr. Sentencing, at 5.  January sought postconviction relief, the state district court denied his application, January filed a postconviction appeal, and the OCCA declined to exercise jurisdiction over the postconviction appeal because January did not comply with state procedural rules for perfecting the appeal.  Dkt. ## 8-6, 8-13, 8-16, at 4.

January now seeks federal habeas relief, asserting eight claims:  (1) the trial court erred by denying his request to strike a prospective juror for cause (claim one); (2) the trial court erred in its response to a jury question about a life sentence (claim two); (3) the trial court erred by failing to give a general limiting instruction regarding other crimes evidence (claim three); (4) trial counsel provided constitutionally deficient representation (claim four); (5) the cumulative effect of trial errors deprived him of a fair trial (claim five); (6) the state deprived him of his constitutional and statutory right to a speedy trial (claim six); (7) the trial court violated the Fourteenth Amendment by denying his request for a free copy of his trial transcripts to prepare his application for postconviction relief (claim seven); and (8) appellate counsel provided constitutionally deficient representation (claim eight).  Dkt. # 1, at 5-18.

Respondent urges the Court to deny the petition, asserting that 28 U.S.C. § 2254(d) bars relief as to claims one through five, to the extent January fairly presented these claims to the

---

³ At the time of the offense conduct, it was a felony "for any person to knowingly and intentionally . . . look upon, touch, maul, or feel the body or private parts of any child under sixteen (16) years of age in any lewd or lascivious manner by any acts against public decency and morality, as defined by law."  OKLA. STAT. tit. 21, § 1123(A)(2) (2018).

OCCA, and that 28 U.S.C. § 2254(b)(1) bars relief as to claims six through eight because January did not fairly present these claims to the OCCA. Dkt. # 8 at 4-5.

## II.　　Legal framework

Federal courts have discretion to grant a writ of habeas corpus to a state prisoner who demonstrates "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") place limits on that discretion. Two limits are relevant here. First, a federal court may not grant relief to a state prisoner unless he either (1) has exhausted available state remedies by fairly presenting his federal claims to the state's highest appellate court, or (2) shown that there is an absence of available state remedies or that available state remedies are ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b)(1); see Grant v. Royal, 886 F.3d 874, 890-91 (discussing exhaustion of available state remedies).

Second, when a state prisoner fairly presents a claim to the state's highest appellate court, a federal court may not grant relief on a federal claim that the state court adjudicated on the merits unless the prisoner first shows that the state court's adjudication of those claims either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**III.    Claims raised on direct appeal**

January presented claims one through five to the OCCA through his direct appeal. Dkt. # 8-2 (state appellate brief). Respondent contends § 2254(d) bars relief as to these claims.[4] For the following reasons, the Court agrees.

   **A.    Failure to excuse an allegedly biased prospective juror from the jury panel**

January claims that he was deprived of his Sixth Amendment right to an impartial jury because the trial court denied his request to strike for cause an allegedly biased prospective juror. Dkt. # 1, at 5, 121-24.

"A criminal defendant in a state court is guaranteed an 'impartial jury' by the Sixth Amendment as applicable to the States through the Fourteenth Amendment." Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976). A prospective juror should be excused for cause if the juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 420 (1985) (emphasis omitted) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). But the trial court has "wide discretion . . . in conducting voir dire . . . in other areas of inquiry that might tend to show juror bias." Mu'min v. Virginia, 500 U.S. 415, 427 (1991). And "[r]eviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the

---

[4] Respondent states that claims one through five "appear to be the same claims [January] raised on direct appeal," but also suggests that January may have, or will at some point, "transform[]" these claims to the extent that they are unexhausted and not properly before this Court. Dkt. # 8, at 4. As to claims one through five, January's petition identifies the same claims he raised on direct appeal and refers this Court to his state appellate brief for support of these claims. Dkt. # 1, at 5-12. Even applying the rule of liberal construction, the Court reads claims one through five as presenting claims that are identical to those that January presented to the OCCA on direct appeal.

4

prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Skilling v. United States, 561 U.S. 358, 386 (2010).  On appellate review, "[a] trial court's finding of juror impartiality may be overturned only for manifest error." Mu'min, 500 U.S. at 428 (cleaned up).  And, on habeas review, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 592 U.S. 111, 112 (2020) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

During voir dire, a prospective juror, J.C., told the trial court that her father had been charged with similar offenses eighteen years ago, that the charges had been dropped, and that she did not believe that experience would cause her to be biased towards the prosecution or January. Dkt. # 9-9, Tr. Trial vol. 1, at 28-29.[5]  The prosecutor further inquired about the charges filed against J.C.'s father. Id. at 44-47.  J.C. then disclosed that she was thirteen years old when her father was charged with sexually abusing J.C.'s younger sister, that the charges should not have been dropped, that she understood that January was presumed innocent, and that she was unsure if she "could be as open-headed as everybody else" based on her personal experience. Id.  The prosecutor requested a bench conference, defense counsel moved to strike J.C. for cause, and the trial court further questioned J.C. in open court:

> THE COURT:  Okay.  [J.C.], thank you so much for your honesty.  So you told me you understood that Mr. January is an innocent man as sitting here today.  You understand that?

---

[5] Before the trial court's initial colloquy with J.C., the trial court granted the parties' joint request to strike for cause a different prospective juror, S.H., who conveyed to the trial court that he did not believe that he could be impartial because his grandson had been convicted and sentenced to prison about one month before January's trial for a similar offense and that S.H.'s experience was "just very new, very fresh." Dkt. # 9-9, Tr. Trial vol. 1, at 17-19.

5

>[J.C.]: Yes.
>
>THE COURT: And it's only if the State is able to prove during trial and present enough evidence that convinces you beyond a reasonable doubt as to whether or not you'll find him guilty. You understand?
>
>[J.C.]: Yes, ma'am.
>
>THE COURT: So are you able then to listen to the evidence in court? We're not necessarily saying you go into the deliberation with an open mind. We're asking do you sit and listen in court with an open mind, and then after you hear all the evidence, be able to render a verdict based upon what you hear in court?
>
>[J.C.]: Yes, ma'am.
>
>THE COURT: Can you do that?
>
>[J.C.]: Yes.
>
>THE COURT: All right. So you're telling me now Mr. January is innocent, and only if the State of Oklahoma can prove to you beyond a reasonable doubt can you then make a determination after you hear all the evidence?
>
>[J.C.]: Yes, ma'am.
>
>THE COURT: All right. So you think that you can be fair and impartial and render a just verdict based upon the evidence after you hear all of the evidence?
>
>[J.C.]: Yes, ma'am.
>
>THE COURT: Okay. All right. So that request at this point will be denied.

Id. at 47-49. J.C. later responded to a question from defense counsel, stating that she would be able to set aside "gut feelings" or "intuition" during the trial and focus on the state's evidence. Id. at 92-93. Defense counsel ultimately passed the panel for cause and did not use a peremptory challenge to excuse J.C. Id. at 96-97, 119, 140, 162, 188-89, 200.

The OCCA rejected January's claim that a biased juror sat on his jury in violation of his Sixth Amendment right to an impartial jury. The OCCA noted that because defense counsel did not use a peremptory challenge to remove the allegedly biased prospective juror, it would review the claim for plain error. Dkt. # 8-1, at 2. The OCCA thus required January "to demonstrate the

6

existence of an actual error that is plain or obvious and that affected his substantial rights, meaning the error affected the outcome of the proceeding." Id. at 3. The OCCA found no plain error, reasoning:

> Because of the obvious difficulty in reviewing juror candidness, this Court relies and places great weight upon the trial court's opinion of the jurors. See Eizember v. State, 2007 OK CR 29, ¶ 41, 164 P.3d 208, 221. See also Underwood v. State, 2011 OK CR 12, ¶ 37, 252 P.3d 221, 240 (juror selection involves many subtle observations, and trial courts have broad discretion when considering a request to excuse a juror for-cause). The record before this Court supports the finding that the trial court's denial of defense counsel's request to remove the prospective juror for-cause was not plain error.

Id.

Respondent contends that § 2254(d) bars relief because the OCCA's decision is not contrary to clearly established federal law, does not involve an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts. Dkt. # 8, at 13-25. January does not discuss the OCCA's decision, much less show that he can satisfy § 2254(d)'s preconditions to habeas relief. Dkt. ## 1, 12. On the record presented, the Court finds that fairminded jurists would agree that the OCCA reasonably applied clearly established federal law by giving due deference to the trial court's assessment of J.C.'s ability to be impartial and by concluding that no "manifest error" called for disturbing the trial court's finding that J.C. would be an impartial juror. Skilling, 561 U.S. at 386; Mu'min, 500 U.S. at 428. The Court therefore denies the petition as to claim one.

### B.     Failure to properly respond to jury question

January claims that he was deprived of his Fourteenth Amendment right to due process because the trial judge did not properly respond to a jury question regarding punishment. Dkt. # 1 at 7, 125-26.

7

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings." Ngyuen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997). But a federal habeas court may review claims alleging that erroneous jury instructions "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Nonetheless, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation" and the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990).

The trial court instructed the jury that if it found January guilty, the sentence could not be less than twenty-five years' imprisonment and that January would be required to serve eighty-five percent of any term of imprisonment before he would be eligible for parole. Dkt. # 9-13, O.R., at 135-36. During deliberations, the jury asked the trial court, "how long is a life sentence?" Id. at 147-48; Dkt. # 9-11, Tr. Trial vol. 3, at 32. After consulting the prosecutor and defense counsel, and with their express agreement, the trial court responded to that question by instructing the jury that it had "all of the law and instructions for [its] deliberations." Id. As he did on direct appeal, January argues that this response violated his right to due process because "the trial judge's failure to fully explain a life sentence to the jury may have resulted in the jury recommending a life sentence." Dkt. # 1, at 126.

The OCCA rejected January's challenge to the trial court's response, stating:

> January next complains that the trial court gave an improper response to the jury's inquiry about the length of a life sentence. Defense counsel not only failed

8

> to object to the response at issue but also agreed to it. Our review on appeal is for plain error only. See Andrew v. State, 2007 OK CR 23, ¶ 126, 164 P.3d 176, 202, overruled on other grounds by Williamson v. State, 2018 OK CR 15, ¶ 51 n.1, 422 P.3d 752, 762 n.1. The trial court was required to instruct the jury accurately on the applicable law. See Bosse v. State, 2017 OK CR 10, ¶ 54, 400 P.3d 834, 854. The instructions given to the jury did accurately inform the jury of the applicable law. The trial court's decision not to expound upon this was not error, plain or otherwise.

Dkt. # 8-1, at 4.

Because the OCCA reviewed this claim for plain error, the OCCA effectively concluded that the trial court's response to the jury question did not violate January's right to due process. See Thornburg v. Mullin, 422 F.3d 1113, 1124 (10th Cir. 2005) ("Oklahoma's plain-error test is rooted in due process."). January does not argue that he can satisfy § 2254(d)'s preconditions to relief as to this claim. Regardless, this Court has reviewed the trial transcripts and the jury instructions and finds that the OCCA applied the federal due process test in an objectively reasonable manner and that fairminded jurists would agree with the OCCA's decision that the trial court's response did not violate January's right to due process. The Court thus denies the petition as to claim two.

### C. Failure to give general limiting instruction regarding other crimes evidence

January claims that he was deprived of his Fourteenth Amendment right to due process because the trial court did not give a general limiting instruction advising the jury that evidence of other crimes committed by January "is to be considered . . . only for the limited purpose for which it was received." Dkt. # 1, at 8, 127-28.

As just discussed, habeas review of an allegedly erroneous jury instruction is limited to the question of whether that instruction "so infected the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72; Ngyuen, 131 F.3d at 1357.

January was charged with lewd molestation of his then-girlfriend's nine-year-old daughter, Z.H. Dkt. # 9-13, O.R., at 5. At trial, Z.H. testified that January entered her bedroom at night, on more than one occasion, and used his fingers to touch her "no-no area," which she identified through an anatomical diagram as her genital area, and Z.H.'s forensic interview—wherein she made disclosures consistent with her trial testimony—was published to the jury. Dkt. # 9-9, Tr. Trial vol. 1, at 230-48; Dkt. # 9-10, Tr. Trial vol. 2, at 19-21, 123 (anatomical diagram); Dkt. # 10 (State's Ex. 2, forensic interview).[6] The state also presented testimony from January's adult stepdaughter, L.Y. Dkt. # 9-10, Tr. Trial vol. 2, at 65-66. L.Y. testified that January entered her bedroom at night, on more than one occasion, beginning when she was between five and seven years old, pulled down her pajamas, and used his fingers to touch her. Id. at 65-68. L.Y. further testified that January raped her by penetrating her with his penis when she was thirteen years old.[7] Id. Before trial, the trial court determined that L.Y.'s testimony about January's prior alleged sexual abuse was admissible under OKLA. STAT. tit. 12, § 2414. Dkt. # 9-7, Tr. Mot. Hr'g (Aug. 26, 2019). Consistent with state law and with the parties' agreement, the trial court refused to instruct the jury that it could consider L.Y.'s testimony for the limited purposes described in OKLA.

---

[6] The Court received two DVDs, labeled State's Exhibits 1 and 2. Dkt. # 10. The DVD labeled State's Exhibit 2 appears to contain only the audio recording of Z.H's forensic interview, but the trial transcript indicates the video recording of her interview was published to the jury. The Court has, however, viewed the DVD labeled State's Exhibit 1 which includes a video recording of Z.H.'s interview.

[7] L.Y. testified that she immediately disclosed the rape to her mother, that they filed a police report and sought a protection order, and that she was interviewed at the Child Advocacy Center. Dkt. # 9-10, Tr. Trial vol. 2, at 68-69. The state did not file charges against January for the 2013 rape of L.Y. until 2019, after the state filed charges against January for the molestation of Z.H. Id. at 76-77; see also Dkt. # 9-6, Tr. Jury Sounding Docket (Aug. 6, 2019), at 2-6 (discussing Case Nos. CF-2018-387 and CF-2019-70); Dkt. # 9-13, O.R., at 67-68 (discussing fact that L.Y. testified at preliminary hearing in CF-2019-70 and moving to introduce her testimony at trial in CF-2018-387 under OKLA. STAT. tit. 12, §§ 2413, 2414).

STAT. tit. 12, § 2404(B), a statute that applies when the state presents "evidence of other crimes, wrongs, or acts." Dkt. # 9-13, O.R., at 140.  Instead, consistent with state law and without objection from either party, the trial court instructed the jury that it "may consider this evidence for its bearing on any matter to which it is relevant" but that it "may not" convict January solely based on a finding that he committed the uncharged offenses or solely based on a belief that "he has a tendency to engage in acts of child molestation." Dkt. # 9-13, O.R., at 131; see OKLA. STAT. tit. 12, § 2414(A) ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.").

The OCCA reviewed this alleged jury instruction error for plain error and denied relief. Dkt. # 8-1, at 4-5.  The OCCA stated:

> As the State points out, not only did defense counsel fail to request the general limiting instruction on other crimes evidence at issue, counsel agreed with the prosecutor that this instruction should not be given.  The limiting instruction given instead of the general limiting instruction was OUJI-CR 2d 9-10A, which addresses evidence of prior sex crimes.  There is no indication from the record that defense counsel objected to the limiting instruction given or that this instruction was given in error.  As Notes on Use for OUJI-CR 2d 9-10A advise, "[t]his instruction should be given when evidence of other offenses involving sexual assault or child molestation has been introduced against a criminal defendant in a sexual assault or child molestation prosecution."  The instruction given was the more fitting instruction.  It accurately stated the applicable law and there was no error, plain or otherwise.  Relief is not required.

Id. at 5.

When the OCCA applies its plain error standard, the OCCA applies the federal due process standard.  Thornburg, 422 F.3d at 1124-25.  January does not argue that the OCCA's adjudication of this claim resulted in a decision that either involved an unreasonable application of the federal due process standard or was based on an unreasonable determination of the facts.  Dkt. ## 1, 12.

11

Nor does the record support either argument. Every fairminded jurist would agree with the OCCA's decision that accurately instructing the jury on applicable law does not violate a criminal defendant's right to due process. The Court thus denies the petition as to claim three.

### D. Failure to provide constitutionally adequate legal representation at trial

January claims that he was deprived of his Sixth and Fourteenth Amendment right to the assistance of trial counsel, raising the same allegations of ineffectiveness that he identified on direct appeal. Dkt. # 1, at 10, 129-36.

Claims of ineffective assistance of counsel are analyzed under the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). A defendant must establish both deficient performance and resulting prejudice. Id. at 687-88. To establish deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When, however, a petitioner seeks habeas relief on a claim of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

#### 1. Evidentiary harpoons

In his state appellate brief, January first faulted defense counsel for failing to object to two "evidentiary harpoons." Dkt. # 8-2, at 20-25. He specifically pointed to testimony from Detective Jared Vance and from L.Y. Id.

In response to a question from the prosecutor about his investigation of Z.H.'s allegations, Detective Vance testified that he "had been made aware that previous allegations had been made

against Mr. January" and that he "contacted the sheriff's office and received those reports." Dkt. # 9-10, Tr. Trial vol. 2, at 54. Detective Vance later testified that he "did reach out to the previous victims from the sheriff's office report" and that he "did speak with those individuals." Id. at 56. In response to questions from defense counsel, Detective Vance further testified that he spoke with L.Y. "and a number of other individuals that surround that incident." Id. at 57. After the jury was excused for lunch, the trial court noted that Detective Vance had referred to "multiple victims," and that only one, L.Y., would be testifying, and asked defense counsel if there was "anything [he] want[ed] to bring up about that." Id. at 63. Defense counsel responded that there was nothing to address. Id.

L.Y., who testified after Detective Vance, also referred to more than one victim. When the prosecutor asked L.Y. whether she had been contacted by Detective Vance, L.Y. responded, "Last September, he contacted my mom and me saying, 'Hey, there's two similar cases. Can I talk to you?'" Id. at 70.

Citing state law, the OCCA stated that "[a]n evidentiary harpoon occurs when an experienced police officer makes a voluntary, willfully jabbed statement injecting other crimes, which is both calculated to prejudice, and is actually prejudicial to, the rights of the defendant." Dkt. # 8-1, at 6-7. The OCCA reasoned that defense counsel was not ineffective for failing to object to these alleged "evidentiary harpoons" because "[t]he comments at issue were not evidentiary harpoons as they did not prejudice January." Id.

### 2. Opening the door

In his state appellate brief, January also complained that defense counsel opened the door to prejudicial information. Dkt. # 8-2, at 25-26. He specifically cited the following question by counsel during cross-examination of L.Y.: "But you know that no one was ever charged. Charges

13

were never filed. He was never arrested, and he never appeared in a courtroom over this situation that you're describing happened to you." Dkt. # 9-10, Tr. Trial vol. 2, at 75. Before redirect examination, a bench conference was held and the following colloquy occurred:

> [Prosecutor]: He referred to the fact that no charges were ever filed, and charges have been filed.
>
> [Defense counsel]: At that time was my question.
>
> [Prosecutor]: He asked if any charges were ever filed.
>
> THE COURT: I'm afraid you might have opened the door.
>
> [Defense counsel]: Okay.

Id. at 76. After the bench conference, the prosecutor asked L.Y. if charges have been filed against January for his alleged abuse of L.Y., and she testified that she was aware that charges were pending against January for his alleged abuse of L.Y. Id. at 76-77. She further testified, in response to defense counsel's question on recross examination, that she was not certain whether those charges were filed before or after the state charged January with molesting Z.H. Id. at 77.

The OCCA reasoned that defense counsel was not ineffective for allegedly opening the door to information about charges related to January's alleged sexual abuse of L.Y. because "evidence of the other allegations of sexual abuse against a child were properly admitted and a limiting instruction was given" and January failed to show prejudice. Id. at 7.

### 3. Remaining alleged deficiencies

Lastly, January's state appellate brief referred back to the trial errors alleged in claims one through three and faulted defense counsel for (1) failing to use a peremptory challenge to excuse J.C. from the jury panel, (2) failing to object to the trial court's allegedly erroneous response to the jury's question about a life sentence, and (3) failing to insist that the trial court give a general limiting instruction regarding other crimes evidence. Dkt. # 8-1, at 26. The OCCA reasoned that

January could not establish prejudice arising from these allegations of ineffectiveness because the OCCA previously had found no merit in his substantive claims that he was tried by an impartial jury, that the trial court erroneously responded to the jury's question about a life sentence, and that the trial court erred in giving a limiting instruction specific to the admission of evidence of other alleged sexual offenses, rather than a general limiting instruction regarding the admission of other crimes evidence. Dkt. # 8-1, at 7-8.

### 4. Reasonableness of OCCA's decision

January does not argue either that the OCCA unreasonably applied Strickland or that the OCCA's unreasonably determined the facts when it rejected his claim that defense counsel provided constitutionally deficient representation. Dkt. ## 1, 12. Nor could he prevail if he had made these arguments. January does not point to, and the Court does not find, any specific facts that were found by the OCCA that either misstated or misapprehended the record. Dkt. ## 1, 12; see Harris v. Sharp, 941 F.3d 962, 972 (10th Cir. 2019) (noting that federal courts "must defer to the state court's factual findings unless "the state court[] plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to [the] petitioner's claim'" (alterations in original) (quoting Ryder ex rel. Ryder v. Warrior, 810 F.3d 724, 739 (10th Cir. 2016))). Thus, the only question for this Court is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105. Here, the OCCA's decision rests primarily on its determination that none of defense counsel's alleged deficiencies resulted in prejudice—i.e., in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 104. As the Richter Court explained, "[t]he likelihood of a different result must be substantial, not just conceivable." Id. at 112. On the record presented, the Court finds no

substantial likelihood of a different result absent defense counsel's allegedly unprofessional errors and thus finds nothing objectively unreasonable about the OCCA's determination that January did not establish Strickland prejudice. The Court therefore denies the petition as to claim four.

### E.     Cumulative effect of trial errors

January claims that the cumulative effect of the trial errors alleged in claims one through three and trial counsel's ineffectiveness deprived him of his Fourteenth Amendment right to a fair trial and due process. Dkt. # 1, at 12, 137-38.

"[W]hen a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable because 'Supreme Court authority clearly establishes the right to a fair trial and due process.'" Hanson v. Sherrod, 797 F.3d 810, 852 n.16 (10th Cir. 2015) (quoting Darks v. Mullin, 327 F.3d 1001, 1017 (10th Cir. 2003)). "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Smith v. Duckworth, 824 F.3d 1233, 1255 (10th Cir. 2016) (quoting Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir. 2003)). This "analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." United States v. Franklin-El, 555 F.3d 1115, 1128 (10th Cir. 2009). "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine 'only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'" Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (citation omitted).

The OCCA rejected January's cumulative error claim. Dkt. # 8-1, at 8. Referring to state law, the OCCA stated, "The cumulative error doctrine applies when several errors occurred at the

trial court level, but none alone warrants reversal." Id. The OCCA then reasoned that "[t]here are no errors, considered individually or cumulatively, that merit additional relief in this case." Id. It is not clear whether the OCCA treated this claim as one implicating January's Fourteenth Amendment right to due process. But, regardless of whether this Court considers claim five under § 2254(d)'s framework or considers this claim de novo, the Court concludes that habeas relief is not warranted because January has not established any federal constitutional errors. Without any federal constitutional errors to aggregate, January cannot obtain relief based on his claim of cumulative error. The Court thus denies the petition as to claim five.

### IV. Claims raised in state postconviction proceeding

January raised his three remaining claims in his state postconviction proceeding. In his application for postconviction relief, January asserted two claims: (1) that the state violated his statutory and constitutional right to a speedy trial (claim six) and (2) that the state deprived him of due process because the trial court denied his request for free trial transcripts to prepare his federal petition for a writ of habeas corpus (claim seven). Dkt. # 8-6. The state district court denied relief as to both claims. Dkt. # 8-13. January filed a notice of intent to appeal and a brief in support of his appeal, raising a new claim in his brief—that appellate counsel provided constitutionally deficient representation (claim eight). Dkt. ## 8-14, 8-15. January, however, did not perfect his postconviction appeal, and the OCCA dismissed the appeal because he did not comply with the OCCA's procedural rule that requires an appellant to attach a certified copy of the state district court's order denying his application for postconviction relief. See Dkt. # 8-16, at 4 (citing Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2021)).

Under these circumstances, the Court agrees with respondent that claims six, seven, and eight are procedurally defaulted. Dkt. # 8, at 46-55. As previously stated, "[a] state prisoner must

exhaust available state remedies before presenting his claim to a federal habeas court." 28 U.S.C. § 2254(b)(1)(A); Davis v Davila, 582 U.S. 521, 527 (2017).  If the state court denies the claim based on an independent and adequate state procedural rule, without reaching the merits of that claim, the claim is technically exhausted but procedurally defaulted for purposes of federal habeas review.  Davila, 582 U.S. at 527; Coleman v. Thompson, 501 U.S. 722, 732 (1991), modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012).  A federal court may not review, much less grant habeas relief on, a procedurally defaulted claim unless the petitioner first shows either cause for the procedural default and resulting prejudice or that the federal court's failure to review the claim will result in a fundamental miscarriage of justice.  Davila, 582 U.S. at 527; Coleman, 501 U.S. at 750.

It is well-settled that the OCCA decision to decline jurisdiction and dismiss a postconviction appeal that does not comply with Rule 5.2(C)'s procedural requirements is an independent and adequate state procedural rule that bars habeas review.  See Brown v. Allbaugh, 678 F. App'x 638, 641-42 (10th Cir. 2017) ("We have held that the OCCA's Rule 5.2(C)—which sets out procedural requirements for filing for post-conviction relief—is an adequate and independent state ground that precludes federal habeas review."); Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998) (concluding that Rule 5.2(C) is adequate and independent state procedural rule).

Even generously construing January's arguments in his petition and reply, the Court discerns none that disputes either the independence or adequacy of this rule. Dkt. ## 1, 12. Rather, January's arguments in response to the procedural default of claims six, seven, and eight suggest: (1) that he exhausted claims six, seven, and eight; (2) that he could not exhaust these claims because the state's postconviction procedures are "janky" and "inept"; (3) that he was forced to

18

choose asserting claim six or claim eight in his application for postconviction relief based on page limitations; and (4) that, to the extent he waived any claims that were not raised on direct appeal, that waiver resulted from appellate counsel's constitutionally deficient performance. Dkt. # 1, at 13-20; Dkt. # 12, at 2-7.  He also suggests, without any factual support, that he might be actually innocent: "Petitioner only wonder(s) what evidence the State destroyed in his case that proved his own Actual-Factual Innocence."  Dkt. # 12, at 8. Beyond January's general criticisms of the state postconviction procedures, none of these arguments squarely addresses the reason for the OCCA's dismissal of his postconviction appeal.  Moreover, he has not shown either that no postconviction remedies are available or that his failure to navigate those remedies can be attributed to anyone but himself.  See 28 U.S.C. § 2254(b)(1)(B) (providing that an absence of available state remedies may excuse a failure to exhaust a federal claim); Murray v. Carrier, 477 U.S. 478, 488 (1986) ("[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.").  In some cases, constitutionally deficient representation by appellate counsel can establish cause to excuse a procedural default if the petitioner can also show actual prejudice.  See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). But this is not one of those cases.  Critically, an ineffective assistance of counsel claim cannot be considered cause to excuse the procedural default of another constitutional claim unless the petitioner also has exhausted (fairly presented) the ineffective assistance of counsel claim in state court. Id. at 452. And January did not exhaust the ineffective assistance of appellate counsel claim, raised here as claim eight, because he first presented it in state court in the supporting brief he submitted to the OCCA in support of his postconviction appeal that the OCCA dismissed on procedural grounds.  January's only other path to overcoming the procedural default is through the

miscarriage of justice exception. McQuiggin v. Perkins, 569 U.S. 383, 392-93 (2013). But this exception applies only when a petitioner makes a "credible showing of actual innocence." Id. at 392. And January does not make that showing. Instead, January merely speculates that evidence allegedly destroyed by the state might have proven his innocence. Dkt. # 12, at 8.

In short, January procedurally defaulted claims six, seven, and eight and he has not shown that he can overcome the procedural default of those claims. The Court therefore denies the petition as to claims six, seven, and eight.

### IV. Conclusion

Based on the foregoing, the Court concludes that January has not shown that he is in state custody in violation of federal law and that his petition shall be denied. The Court further concludes that no certificate of appealability shall be issued because reasonable jurists would not debate this Court's assessment of claims one through five or its determination that claims six through eight are procedurally barred. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that: (1) the petition for writ of habeas corpus (Dkt. # 1) is **denied**; (2) a certificate of appealability is **denied**; and (3) a separate judgment shall be entered herewith.

**DATED** this 21st day of July, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE